No. 24-1159

IN THE

# United States Court of Appeals for the Fourth Circuit

COLUMBIA GAS TRANSMISSION, LLC,

*Plaintiff-Appellee,*

V.

RDFS, LLC, A TEMPORARY EASEMENT TO OPERATE AND MAINTAIN A NATURAL GAS TRANSMISSION LINE ACROSS 1.46 ACRES OF PROPERTY IN WETZEL COUNTY, WEST VIRGINIA, (PARCEL ID NO. 2-8-58),

*Defendant-Appellant.*

On Appeal from the Order of the United States District Court for the Northern District of West Virginia, No. 5:23-cv-00364-JPB, Dated February 5, 2024

**Emergency Motion of Plaintiff-Appellee for Summary Affirmance**

Nicolle R. Snyder Bagnell
Colin E. Wrabley
REED SMITH LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
(412) 288-3131 (Tel.)
nbagnell@reedsmith.com

*Counsel for Plaintiff-Appellee*
*Columbia Gas Transmission, LLC*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 24-1159        Caption: Columbia Gas Transmission, LLC v. RDFS, LLC, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Columbia Gas Transmission, LLC
(name of party/amicus)

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?  ☑YES ☐NO

2. Does party/amicus have any parent corporations?                    ☑YES ☐NO
   If yes, identify all parent corporations, including all generations of parent corporations:

   Columbia Pipelines Operating Company, LLC

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                        ☐YES ☑NO
   If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?     ☐YES ☑NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?     ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.     Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature:    s/ Nicolle R. Snyder Bagnell       Date:     2/22/24

Counsel for:    Columbia Gas Transmisson LLC

## TABLE OF CONTENTS

**Page**

I.    FACTUAL AND PROCEDURAL BACKGROUND........................................3

    A.    The Pipeline And The Parties' Easement Agreement................................3

    B.    Columbia Is Informed About Planned Mining Under The Pipeline On RDFS's Property, Which Will Require Substantial Subsidence Mitigation To Protect The Pipeline's Integrity And Prevent Injury And Damage..........................................................................................4

    C.    After RDFS Refuses To Give Columbia Access To Perform Subsidence Mitigation, Columbia Files The Underlying Action Under The Agreement And The Natural Gas Act, Which RDFS Moves To Dismiss.........................................................................6

    D.    The District Court Issues An Order Denying RDFS's Motion To Dismiss, Which RDFS Appeals, And Columbia Moves For Injunctive Relief.........................................................................7

II.   ARGUMENT ...............................................................................8

III.  CONCLUSION............................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aggarao v. MOL Ship Mgmt. Co., Ltd.,*
  675 F.3d 355 (4th Cir. 2012) ............................................................................2

*Am. Express Co. v. Italian Colors Restaurant,*
  570 U.S. 228 (2013) .........................................................................................8

*Am. Gen. Life & Acc. Ins. Co. v. Wood,*
  429 F.3d 83 (4th Cir. 2005) ..............................................................................7

*Arthur Andersen LLP v. Carlisle,*
  556 U.S. 624 (2009) .........................................................................................9

*Coinbase, Inc. v. Bielski,*
  143 S. Ct. 1915 (2023) ...................................................................................2, 8

*Del Webb Cmtys., Inc. v. Carlson,*
  817 F.3d 867 (4th Cir. 2016) ............................................................................9

*First Options of Chi., Inc. v. Kaplan,*
  514 U.S. 938 (1995) .........................................................................................9

*Howsam v. Dean Witter Reynolds, Inc.,*
  537 U.S. 79 (2002) ...........................................................................................9

*Kelly v. Painter,*
  504 S.E.2d 171 (W. Va. 1998) ..........................................................................9

*Miller v. St. Joseph Recovery Ctr.,*
  874 S.E.2d 345 (W. Va. 2022) ..........................................................................9

*Morgan v. Sundance, Inc.,*
  142 S. Ct. 1708 (2022) ....................................................................................12

*Rogers v. Tug Hill Operating, LLC,*
  76 F.4th 279 (4th Cir. 2023) .............................................................................9

*Vance v. DIRECTV, LLC,*
  No. 5:17-cv-179, 2022 U.S. Dist. LEXIS 167113
  (N.D. W. Va. Aug. 25, 2022) ..........................................................................12

**Statutes**

15 U.S.C. § 717f(h) ..................................................................................1, 6

**Rules**

4th Cir. R. 27(e) ...........................................................................................1

4th Cir. R. 27(f)(1) ...................................................................................1, 8

**Emergency Motion of Plaintiff-Appellee**
**Columbia Gas Transmission, LLC for Summary Affirmance**

Pursuant to 4th Circuit Rules 27(e) and 27(f)(1), Plaintiff-Appellee files this emergency motion seeking summary affirmance of the district court's order denying Defendant's motion to dismiss. That relief is necessary to ensure that Columbia can perform subsidence mitigation work before third party American Consolidated Natural Resources (ACNR) commences longwall mining under a pipeline that runs through Defendant RDFS's property. Subsidence mitigation, in turn, is critical to protecting the pipeline from damage, strain, and subsidence caused by ACNR's planned mining, which would result in increased safety risks, including serious injury or even loss of life, as well as the interruption of natural gas service to the public. If Columbia is granted access to RDFS's property later than March 1, 2024, it will not be able to safely and timely perform the necessary mitigation operations prior to the mining.

Despite these exigent circumstances and the parties' unambiguous easement agreement entitling Columbia to access, RDFS has refused to grant Columbia access to perform the necessary subsidence mitigation. And RDFS's appeal of the district court's recent ruling that Columbia's contractual access claims are not arbitrable could be found to effect a stay of the district court's ability to grant Columbia's pending motion for preliminary injunction seeking access under the parties' easement agreement.[1] *See*

---

[1]    In its motion for preliminary injunction, Columbia alternatively seeks condemnation and immediate access to RDFS's property to perform the subsidence mitigation under the Natural Gas Act, 15 U.S.C. § 717f(h), and Columbia's blanket

*Coinbase, Inc. v. Bielski*, 143 S. Ct. 1915, 1920 (2023) (holding that where party takes an interlocutory appeal on arbitrability, district court "must stay its proceedings" relating to the appeal); *but see Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 376 (4th Cir. 2012) (holding that even a pending arbitration does not preclude injunctive relief to prevent the arbitration from being a "hollow formality").[2]

The Court's intervention accordingly is critical and summary disposition is warranted because RDFS's appeal has no merit. The parties' easement agreement requires arbitration only of the "amount" of "any damages to crops, trees or fences" on RDFS's property. But Columbia's claims, which seek declaratory and injunctive relief providing Columbia access to RDFS's property, have nothing to do with "damages to crops, trees or fences[,]" and no such "damages" have occurred. Under settled precedent and the plain terms of the agreement's arbitration provision, Columbia's easement claims fall clearly outside the scope of that provision, and the district court's ruling thus is plainly correct and should be affirmed.

Columbia acknowledges that motions for summary affirmance are reserved for special circumstances. Given the exigencies created by RDFS's meritless appeal, we

---

certificate of public convenience and necessity that governs its pipeline. Columbia's Natural Gas Action claim is not subject to arbitration or RDFS's pending appeal.

[2]    Earlier today, Columbia filed an opposition to RDFS's motion to stay in the district court, arguing, among other things, that RDFS's appeal does not preclude the district court from granting injunctive relief on Columbia's contract claims that preserves the status quo—here, the existing safety and integrity of Columbia's pipeline. ECF No. 38.

respectfully submit those special circumstances are present here. The Court should therefore grant this motion on an emergency basis so that the district court can consider Columbia's request for injunctive relief.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Pipeline And The Parties' Easement Agreement

On January 7, 1983, the Federal Energy Regulatory Commission (FERC) issued an order granting Columbia a Blanket Certificate of Public Convenience and Necessity (the Blanket Certificate). Decl. of Stuart Cole Shannon, ECF No. 17-1; Compl. ¶ 9. Pursuant to the Blanket Certificate, Columbia owns, operates, and maintains an interstate natural gas pipeline, known as Line 1983, which travels across parts of Wetzel County, West Virginia. *Id.* ¶ 10.

On November 3, 1969, Columbia's predecessor, Manufacturer's Light and Heat Company, entered into a pipeline easement agreement concerning the property at issue (the Property) with its owners Weldon and Pearl Tennant, RDFS's predecessors-in-interest. Compl. ¶ 11; ECF No. 1-2 (the Right-Of-Way Agreement or Agreement) (attached hereto as Exhibit 1). The Agreement granted Columbia an easement giving it the right to construct, operate, and maintain the pipeline. Relevant here, the Agreement contains the following arbitration provision:

> The Landowner and the Company have agreed as a part of the consideration hereof that any damages to crops, trees or fences on said premises, the amount of which cannot be mutually agreed upon, shall be determined by a panel of arbitrators composed of there disinterested persons, of whom the Landowner and the Company shall appoint one

each and the two arbitrators so appointed shall appoint the third, the award of any two of whom shall be final and a condition precedent to the institution of any legal proceedings hereunder.

*See* Exhibit 1. The Agreement does not otherwise refer to arbitration.

On January 21, 2021, RDFS acquired the Property, subject to the Right-Of-Way Agreement and Columbia's easement, by Quitclaim Deed. Compl. ¶ 14. Columbia has used the easement to operate and maintain Line 1983 on the Property. *Id.* ¶ 13.

**B.    Columbia Is Informed About Planned Mining Under The Pipeline On RDFS's Property, Which Will Require Substantial Subsidence Mitigation To Protect The Pipeline's Integrity And Prevent Injury And Damage**

Columbia was informed by ACNR that the Property would be undermined as part of a longwall panel beginning in June of 2024. Compl. ¶ 15. This is subject to change according to the coal mine's schedule and productivity. *Id.* ACNR's planned longwall mining operations will mine 6-8 feet thick coals seams 600-800 feet below the ground under Line 1983 across the Property. *Id.* ¶ 16.

That mining will likely cause the ground to subside in places above the area mined. *Id.* ¶ 17. The potential subsidence of earth underneath and around Line 1983 on the Property poses a serious risk to the integrity of the pipeline. *Id.* To avoid the risks posed by ACNR's planned longwall mining operations, Columbia must undertake pipeline subsidence mitigation efforts. *Id.* ¶ 18. These efforts require Columbia to completely unearth the pipeline, both above and below, in the area under which the planned longwall mining operations will occur. *Id.*

Here, because Line 1983 is a 24" pipeline that is estimated to be, on average, about four to eight feet below the surface, the ditch will need to be approximately 30 feet wide. ECF No. 17-1 ¶ 21. In order to unearth the pipeline, Columbia must have sufficient width on one side of the pipeline to run heavy equipment in a manner that will not impact the pipeline. *Id.* ¶ 22. On the other side of the pipeline, Columbia must have sufficient width to place the removed and stockpiled dirt from above the pipeline. *Id.* ¶ 23. The total width that is necessary for Columbia to safely and efficiently undertake this work is 100 feet, including the permanent 50' easement and additional temporary easements of 25' on either side. *Id.* ¶ 24.

Columbia must also install strain gauges to monitor how much strain the pipe endures as a result of the ground subsidence caused by the longwall mining operations. *Id.* ¶ 25. After the planned longwall mining operations are complete, the Property has been undermined, and the ground is finished subsiding, Columbia must re-bury the pipeline and reclaim the area. *Id.* ¶ 26.

In order to perform this subsidence mitigation work prior to the ACNR planned undermine date and the West Virginia deadline for tree clearing to protect the Indiana Bat, Columbia must have temporary access to certain areas outside the boundary of Columbia's existing permanent easement across the Property by no later than March 1, 2024. *Id.* ¶ 27.

C.     **After RDFS Refuses To Give Columbia Access To Perform Subsidence Mitigation, Columbia Files The Underlying Action Under The Agreement And The Natural Gas Act, Which RDFS Moves To Dismiss**

Columbia contacted RDFS regarding the temporary access needed for the safe and effective execution of subsidence mitigation operations. Compl. ¶ 23. In response, RDFS informed Columbia that it will not allow Columbia onto the Property beyond the existing easement area and refused to accept Columbia's offer for greater access. *Id.* ¶ 24.

In response to RDFS's refusal to permit Columbia onto the Property, Columbia filed this action. Its complaint contains three counts: (i) for a declaration under the Agreement that Columbia may temporarily access the Property to conduct subsidence mitigation operations necessary to protect the pipeline (Count I); (ii) for an injunction granting Columbia immediate access to the Property to conduct those mitigation operations, pursuant to the Agreement (Count II); and (iii) for condemnation and access to the Property under the Natural Gas Act, 15 U.S.C. § 717f(h) (Count III). *See* Compl. pp. 5-10.

RDFS moved to dismiss Counts I and II for improper venue, seemingly claiming that those claims are subject to the Agreement's arbitration provision. *See* Mem. In Support of Mot. to Dismiss, ECF No. 5. But RDFS actually argued that arbitration is a "condition precedent" for bringing those claims *in court* because they are supposedly "premised on the alleged inability of the parties to mutually agree to the proper amount of compensation due for damages under the Right of Way Agreement[.]" *Id.* at 6.

Columbia responded that the Agreement's arbitration provision, by its plain terms, "is clearly limited to a determination of an amount of payment for 'damages to crops, trees or fences'" on the Property, but "does not cover the broader question" raised by Counts I and II: "whether Columbia has the right to access the Property to perform critical subsidence mitigation under the Right of Way Agreement[.]" Resp. in Opp'n to Mot. to Dismiss, ECF No. 8 at 2. Those Counts, Columbia further explained, "go to a fundamental question of legal authority" but "do not concern or even mention 'damages to crops, trees or fences.'" *Id.* at 7-8 (citation omitted).

## D.    The District Court Issues An Order Denying RDFS's Motion To Dismiss, Which RDFS Appeals, And Columbia Moves For Injunctive Relief

On February 5, 2024, the district court issued an order denying RDFS's motion to dismiss. ECF No. 15 (the Order, attached hereto as Exhibit 2). The court found "that the parties agreed to arbitrate disputes over damages to crops, trees, or fences[, but] the dispute in this case is not about damages to crops, trees or fences." Order at 5. Rather, the "dispute is about whether Columbia has the authority to enter RDFS's property to perform subsidence mitigation work." *Id.* Thus, the court concluded, the Agreement's arbitration provision does not "'cover the dispute'" here and venue in the district court—and not before an arbitration panel—was proper. *Id.* (quoting *Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005)).

Four days after the dismissal ruling, on February 9, Columbia moved for a preliminary injunction on its Counts I and II claims for access and, alternatively, for

condemnation and access on its Natural Gas Act claim. Mot. for Prelim. Inj., ECF No. 16. Columbia also asked the district court to expedite the briefing and hearing on Columbia's motion (Plf. Mot. to Expedite, ECF No. 19), which the district court granted, setting a hearing for February 28 (Order, ECF No. 22).

A week later, on February 16, RDFS appealed the district court's denial of its motion to dismiss (Notice of Appeal, ECF No. 23) and filed a motion to stay in the district court (Mot. to Stay, ECF No. 24). In support of its stay motion, RDFS argues that under *Coinbase, Inc. v. Bielski*, 143 S. Ct. 1915 (2023), the court should "stay[ ] all proceedings" in the case "during the pendency of RDFS's appeal regarding the arbitrability of the claims in this matter." Mem. In Support of Mot. to Stay, ECF No. 25 at 1. Columbia will file a response to RDFS's stay motion before 5:00 p.m. today, February 22.

## II.   ARGUMENT

Summary affirmance is appropriate where the issues raised on appeal are "manifestly unsubstantial and appropriate for disposition by motion." 4th Cir. R. 27(f)(1). The issues raised by RDFS's appeal here are "manifestly unsubstantial" and the Court should summarily affirm the district court's ruling that Columbia's claims for declaratory and injunctive relief are not arbitrable.

Arbitration is "a matter of contract," and courts "must rigorously enforce arbitration agreements according to their terms. . . ." *Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013) (internal quotation marks omitted). Although the

-8-

Supreme Court has "long recognized and enforced a liberal federal policy favoring arbitration agreements," *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal citation and quotation marks omitted), courts must be "careful to avoid forcing parties to resolve their disputes through means not intended at the time of contract formation." *Del Webb Cmtys., Inc. v. Carlson*, 817 F.3d 867, 873 (4th Cir. 2016) (citations omitted); *see also First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 945 (1995) ("[A] party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration").

In this regard, the Federal Arbitration Act does not "alter background principles of state contract law regarding the scope of agreements. . . ." *Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279, 287 (4th Cir. 2023) (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009)); *see also First Options*, 514 U.S. at 944 (same). Thus, to determine whether the Agreement's arbitration provision encompasses Counts I and II of Columbia's complaint, the Court must look to principles of West Virginia contract law.

Under West Virginia law, the "plain language of the contract controls." *Kelly v. Painter*, 504 S.E.2d 171, 175 (W. Va. 1998). Where "the terms of a contract are clear and unambiguous, they must be applied and not construed." *Miller v. St. Joseph Recovery Ctr.*, 874 S.E.2d 345, 352 (W. Va. 2022) (citation omitted). "Furthermore, '[i]t is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them.'" *Id.* (citation omitted); *see also Kelly*, 504 S.E.2d at 175

-9-

(courts applying West Virginia law are "not at liberty to rewrite the contract between the parties").

Applying these controlling principles here, the Agreement's arbitration provision plainly does not encompass Columbia's claims for declaratory and injunctive relief seeking immediate access to RDFS's Property to conduct necessary subsidence mitigation operations. The Agreement's arbitration provision provides for arbitration only of "any damages to crops, trees or fences on" the Property where the amount of those damages "cannot be mutually agreed upon[.]" Ex. 1. It makes no reference to access to the Property—which is what Columbia seeks—and Columbia's claims have nothing to do with any "damages to crops, trees or fences," none of which have occurred. In short, only by rewriting the arbitration provision could it be read to cover Columbia's claims under the Agreement, but that is something this Court may not do.

Moreover, the only party that could seek relief for damages to crops, trees or fences is RDFS, the property owner. While RDFS has filed an answer and counterclaims in the district court (Def. Answer, ECF No. 28), it has not asserted a counterclaim for such non-existent damages (nor could it). If and when any covered damages occur as a result of Columbia's subsidence mitigation operations, RDFS will be free to arbitrate a claim seeking compensation for those damages, just as the Agreement provides. But that has no bearing on the arbitrability *of Columbia's claims*.

RDFS's sole argument in the district court in support of dismissal is meritless— *and not even an argument that Columbia's claims are arbitrable.* It contended that Columbia's

-10-

claims are "premised on the alleged inability of the parties to mutually agree to the proper amount of compensation due for damages under the Right of Way Agreement," and that "arbitration" must be completed as a "condition precedent for bringing *those claims to th[e district c]ourt. . . .*" ECF No. 5 at 6 (emphasis added). That is not an argument that Counts I and II of Columbia's complaint must be arbitrated—it is an argument that arbitration of *other claims* that have not yet been asserted, and could not even be asserted by Columbia, must first take place before Columbia may "bring[ ] [its] claims" in Counts I and II *in court. Id.*

In any event, RDFS's "condition precedent" argument is flawed in every particular. First, Columbia's claims for declaratory and injunctive relief are not "premised" on the parties' inability to agree on compensation "for damages under" the Agreement. To avoid litigation, Columbia offered RDFS compensation in exchange for the access it needs for mitigation operations, which RDFS rejected. But that was not "compensation due for damages" under the Agreement. Columbia's claims seeking access thus are not "premised" on the parties' failure to reach an out-of-court resolution of Columbia's request for access. Rather, they are premised on the broad language of the Agreement, which unequivocally gives Columbia the rights to "operate, maintain, replace, and ultimately remove" Line 1983 on the Property. *See* ECF No. 17-1.

Second, the contractual requirement that "any damages to crops, trees or fences" on RDFS's property be arbitrated cannot reasonably be read as a "condition precedent" to any and all litigation under the Agreement. Such a reading would foreclose access to

the courts in sweeping fashion, barring any lawsuit by either party for any purpose unless and until a covered arbitration of "damages for crops, trees or fences" takes place—if one ever does. Coupled with the narrow scope of the arbitration provision, that would mean Columbia would be without any dispute-resolution recourse, in court or arbitration, absent a covered arbitration—even where, as here, judicial intervention indisputably is necessary to prevent serious, potentially life-threatening damage to the pipeline. That is not what the arbitration provision says and it would make no sense to read it that way.

Third, and finally, RDFS's own conduct in this litigation refutes its reading of the arbitration provision as requiring a covered arbitration as a condition precedent to any litigation. Without seeking arbitration of any claim for "any damages to crops, trees or fences," RDFS recently filed counterclaims against Columbia in the district court (ECF No. 28 ¶ 11) (citation omitted). *See Vance v. DIRECTV, LLC*, No. 5:17-cv-179, 2022 U.S. Dist. LEXIS 167113, at *10 (N.D. W. Va. Aug. 25, 2022) (Bailey, J.) (noting that party can waive its right to arbitration by litigating) (citing *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1714 (2022)).

## III.   CONCLUSION

For the foregoing reasons, the Court should summarily affirm the district court's dismissal ruling prior to February 28, 2024, to ensure the district court can fully consider Columbia's requests for declaratory and injunctive relief granting it access to conduct subsidence mitigation on RDFS's Property.

Dated:  February 22, 2024

Respectfully submitted,

_/s/ Nicolle R. Snyder Bagnell_
Nicolle Snyder Bagnell
Colin E. Wrabley
REED SMITH LLP
REED SMITH CENTRE
225 Fifth Avenue, Suite 1200
Pittsburgh, PA  15222-2716
(412) 288-3131 (Tel.)
nbagnell@reedsmith.com

*Counsel for Plaintiff-Appellee*
*Columbia Gas Transmission, LLC*

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the word limit of Fed. R. App. P.

27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P.

32(f), it contains 3,154 words.


REED SMITH LLP

By:  _/s/ Nicolle R. Snyder Bagnell_____

**CERTIFICATE OF SERVICE**

I hereby certify that on February 22, 2024, this emergency motion was filed with the Clerk of the Court using the Court's CM/ECF System, which will serve the filing electronically on all registered CM/ECF users.

REED SMITH LLP

By:   _/s/ Nicolle R. Snyder Bagnell_

# EXHIBIT 1

28027
~~28009~~

445

8/w  No 28 027

## RIGHT OF WAY

21-72-34

For and in consideration of One Dollar ($1.00) paid by THE MANUFACTURERS LIGHT & HEAT COMPANY

_____, a _____ corporation, hereinafter called the Company, to _____

Weldon Tennant and Pearl Tennant, his wife

_____

hereinafter collectively called the Landowner, the receipt whereof is hereby acknowledged, and in further consideration of the

promise of the Company to pay the Landowner the sum of **Five thousand-one hundred & No/100** Dollars

($5,100.00 ) before entry is made to construct the same, which sum includes a payment of **Three and No/100**

_____ Dollars ($ 3.00 ) per linear rod of pipeline to be laid on the premises described herein and payment in full for all damages in advance that may be caused by the construction of said pipeline, to be laid on the premises described herein, before entry is made to construct the same, and to pay Landowner for any damage to crops, trees and fences caused by the operation, maintenance, replacement or removal of said pipeline, the Landowner does hereby grant and convey to the Company

an easement or right of way to construct a **24** -inch or smaller pipeline and appurtenant equipment for the transportation of gas, oil, petroleum products or any other materials or substances which may be transported singly or in combination through a pipeline; ~~to construct x telephone or telegraph lines~~; and to operate, maintain, replace and finally remove said lines; over and through

all that certain tract of land situate in _____ Church _____ District ~~County~~, Wetzel _____

County, State of _____ West Virginia _____ , bounded and described as follows:

On the North by lands of Chas. O. Ice, Atty. in fact for Myron Ice, et al

On the East by lands of Lester Karl, Jr. & State Route No. 7

On the South by lands of Earl B. & Mabel M. Bragg,, heirs

On the West by lands of Gilbert Lessor ,

containing **39.01** acres, more or less, with the right of ingress and egress to and from the same, title to which was de-
rived from **Harry Fetty and others by deed dated /** 7/11/58, recorded 210 D. B. 303, , reserving to the Landowner the full use and enjoyment of said premises, except for the rights herein granted to said Company.

The Landowner and the Company have agreed as a part of the consideration hereof that any damages to crops, trees or fences on said premises, the amount of which cannot be mutually agreed upon, shall be determined by a panel of arbitrators composed of three disinterested persons, of whom the Landowner and the Company shall appoint one each and the two arbitrators so appointed shall appoint the third, the award of any two of whom shall be final and a condition precedent to the institution of any legal proceedings hereunder.

~~The Landowner hereby grants unto the Company the right to lay, maintain, operate, replace and remove additional lines of pipe at any time for the carrying of gas, oil, petroleum products or any other materials or substances which may be transported singly or in combination through a pipeline alongside of the first line to be laid hereunder, upon the payment for the right of way for each additional line of pipe at the same rate per linear rod and payment for any damages to crops, trees and fences as provided for the first line of pipe above mentioned upon the making of payment or tender for each additional line of pipe.~~

The rights, privileges and terms hereby shall extend to and be binding upon the Landowner and the Company and their respective representatives, heirs, successors and assigns.

WITNESS, the following signatures and seals this **3rd** day of **November** , 19 **69**.

Signed, sealed and delivered
in the presence of:

WITNESS:

_(signature)_

_J. Lynn Brown_

_Weldon Tennant_ (SEAL)
_Pearl Tennant_ (SEAL)
_____ (SEAL)
_____ (SEAL)
_____ (SEAL)
_____ (SEAL)

DATE
RECEIVED LAND DEPT.

Form LA-10 R/W & Damages

STATE OF WEST VIRGINIA,  
COUNTY OF **WETZEL** } TO WIT.

I **Esther P. Stover** a Notary Public of said County of **Wetzel**

do CERTIFY that **Weldon Tennant and Pearl Tennant, his wife,**

_____

whose name **s** **are** signed to the writing above, bearing date the **3rd** day of **November,**

19 **69** ha **ve** this day acknowledged the same before me, in my said county.

Given under my hand, this **3rd** day of **November** 19 **69**

My Commission Expires **Dec. 16, 1978** _Esther P. Stover_ Notary Public.

of **Wetzel** County, West Virginia

STATE OF _____  
COUNTY OF _____ } SS:

Be it remembered that on this _____ day of _____ A. D. 19____

before me, the undersigned, a _____ in and for said County and State personally came the above

named _____

and acknowledged the foregoing indenture to be _____ voluntary act and deed, for the uses and purposes

therein set forth and desired the same to be recorded as such.

Witness my hand and _____ seal the day and year aforesaid.

My Commission Expires _____ _____ (SEAL)  
NOTARY PUBLIC

"This instrument was prepared by J. Lynn Brown, Lease and Right of Way Agent for The Manufacturers Light & Heat Company."

---

1698

No. 32

3913-I-L-4-3437

Work Order No. _____

**RIGHT OF WAY**

FROM

Address WELDON TENNANT, ET UX BURTON, WEST VIRGINIA

TO

THE MANUFACTURERS LIGHT & HEAT CO.

Date NOVEMBER 3, 1969

Line 69.94

Rods of 24-INCH Pipe

BOOK 38 PAGE 445 District CHURCH Township

County _____

19__ ____

19__ ____

Page _____

Recorder _____

1983

Return to  
LAND DEPARTMENT  
800 Union Trust Building  
Pittsburgh, Pennsylvania 15219

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling

**COLUMBIA GAS TRANSMISSION, LLC,**

         Plaintiff,

    v.                          **CIVIL ACTION NO. 5:23-CV-364**
                                           Judge Bailey

**RDFS, LLC, and UNKNOWN PERSONS
AND INTERESTED PARTIES,**

         Defendants.

## ORDER DENYING RDFS LLC'S MOTION TO DISMISS COUNTS I & II

Pending before this Court is Defendant RDFS, LLC's Motion to Dismiss Counts I &

II of Plaintiff's Complaint Pursuant to FRCP 12(b)(3) [Doc. 4] and an accompanying

Memorandum in Support [Doc. 5], filed January 10, 2024. Columbia Gas Transmission,

LLC filed a Response [Doc. 8] on January 24, 2023. RDFS, LLC did not file a Reply.

Accordingly, this matter is ripe for adjudication. For reasons contained herein, the Motion

will be denied.

## BACKGROUND

Columbia Gas Transmission, LLC ("Columbia") is a natural gas company that owns,

operates, and maintains an interstate natural gas pipeline, known as Line 1983, throughout

Pennsylvania and West Virginia. [Doc. 1 at ¶¶ 9–10]. More specifically, Line 1983 runs

throughout Wetzel County, West Virginia. [Id. at ¶ 10]. On November 3, 1969, Columbia's

predecessor, Manufacturer's Light and Heat Company, entered into a pipeline easement

agreement with Weldon and Pearl Tennant. [Doc. 1-2]. On January 21, 2021, RDFS, LLC

("RDFS") acquired the property, subject to Columbia's existing easement, by Quitclaim Deed. [Doc. 1-3]. The easement granted Columbia the right to construct, operate, and maintain the pipeline. *See* [Doc. 1-2]. Columbia has used the easement to operate and maintain Line 1983 on RDFS's property in Wetzel County, West Virginia. [Doc. 1 at ¶ 13].

Columbia alleges American Consolidated Natural Resources ("ACNR") recently informed it that the property would be undermined as part of a longwall panel beginning in June 2024. [Id. at ¶ 15]. Columbia contends that the planned longwall mining operations will "likely cause the ground to subside in places above the area mined" and "the potential subsidence of earth underneath and around Line 1983 on the property poses a serious risk to the integrity of the pipeline." [Id. at ¶ 17]. To avoid the risks posed by ACNR's planned longwall mining operations Columbia alleges that it must undertake pipeline subsidence mitigation efforts. [Id. at ¶ 18]. More specifically, these efforts require Columbia to uncover the pipeline in the area under which the planned longwall mining operations will occur and, install strain gauges to monitor how much strain the pipeline endures as a result of the ground subsidence caused by the longwall mining operations. [Id. at ¶¶ 18–19]. Moreover, after the planned longwall mining operations are complete, the property has been undermined, and the ground is finished subsiding, Columbia must re-bury the pipeline and reclaim the area. [Id. at ¶ 20]. In order to perform this subsidence mitigation work prior to ACNR's planned undermined date, it must have temporary access to certain areas across RDFS's property by March 1, 2024. [Id. at ¶ 21]. Further, Columbia alleges that it requires use of a temporary easement of 0.73 acres across and additional temporary easement of 0.73 acres for a combined workspace of 1.46 acres of property beyond the permanent easement it regularly maintains. [Id. at ¶ 22].

2

Columbia alleges that it contacted RDFS regarding the temporary workspace needed to perform the subsidence mitigation operations and RDFS has refused to accept Columbia's offers.  [Id. at ¶ 23–24].  Moreover, RDFS has informed Columbia that it may not use any easement area beyond what it regularly maintains.  [Id. at ¶ 24].  As a result, on December 19, 2023, Columbia filed a Complaint.  *See* [Doc. 1].  In its Complaint, Columbia seeks a declaratory judgment to enforce an existing pipeline easement agreement and injunctive relief compelling RDFS to permit it access to the property subject to the easement agreement.  In the Alternative, Columbia's Complaint asserts a third cause of action for condemnation.

RDFS seeks dismissal of Columbia's claims for declaratory judgement (Count I) and injunctive relief (Count II) pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue.  *See* [Doc. 4].  In support of its Motion, RDFS contends that the Right of Way Agreement contains an arbitration provision that requires the parties to submit their dispute to arbitration prior to seeking judicial relief.  [Doc. 4 & Doc. 5 at 5].  On the other hand, Columbia argues that the arbitration provision in the Right of Way Agreement does not apply to its claims.  [Doc. 8 at 5].

## LEGAL STANDARD

Under Rule 12(b)(3), a party may move to dismiss a claim for improper venue.  Fed. R. Civ. P. 12(b)(3).  When an objection to venue is raised under Rule 12(b)(3), the burden is generally on the plaintiff to show that venue is proper.  ***Colonna's Shipyard, Inc. v. City of Key West***, 735 F.Supp.2d 414, 416 (E.D.Va. 2010) (Davis, J.) (citing ***Bartholomew v. Va. Chiropractors Ass 'n, Inc.***, 612 F.2d 812, 816 (4th Cir.1979), *overruled on other*

grounds by **Union Labor Life Ins. Co. v. Pireno**, 458 U.S. 119 (1982)). The plaintiff is obliged, however, to make only a prima facie showing of proper venue in order to survive a motion to dismiss. **Aggarao v. MOL Ship Mgmt. Co.**, 675 F.3d 355, 366 (4th Cir. 2012). In assessing whether plaintiff has made that showing, courts must construe all factual allegations in favor of the plaintiff. **Id.** Unlike on a Rule 12(b)(6) motion, courts considering a Rule 12(b)(3) motion are permitted to consider evidence outside the pleadings. **Id.**

## DISCUSSION

In the Fourth Circuit, a party may compel arbitration under the Federal Arbitration Act ("FAA") if he or she demonstrates: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provisions which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of [a party to arbitrate the dispute." **Am. Gen. Life & Accident Ins. Co. v. Wood**, 429 F.3d 83, 87 (4th Cir. 2005) (citing **Adkins v. Labor Ready, Inc.**, 303 F.3d 496, 500–01 (4th Cir. 2002)). "Under the FAA, . . . parties are only bound to arbitrate those issues that by clear and unmistakable writing they have agreed to arbitrate." **SWN Prod. Co. LLC v. Long**, 240 W.Va. 1, 4, 807 S.E.2d 249, 252 (2017).

The parties dispute whether the second element set forth in **Am. Gen. Life & Accident Ins. Co.** has been satisfied. *See* [Docs. 5 & 8]. The Right of Way Agreement contains an arbitration provision that states:

> The Landowner and the Company have agreed as a part of the
> consideration hereof that any damages to crops, trees or fences on said

4

premises, the amount of which cannot be mutually agreed upon, shall be determined by a panel of arbitrators composed of three disinterested persons, of whom the Landowner and the Company shall appoint one each and the two arbitrators so appointed shall appoint the third, the award of any two of whom shall be final and a condition precedent to the institution of any legal proceedings hereunder.

[Doc. 1-2 at 2]. Columbia argues that the arbitration provision does not apply to this case because the dispute is not about damage to crops, trees or fences. [Doc. 8 at 7–8]. Instead, the dispute concerns whether Columbia has the authority enter the Property to perform subsidence mitigation work. [Doc. 8 at 7]. RDFS on the other hand believes that the arbitration agreement applies to the present dispute as Count I and Count II are "premised on the alleged inability of the parties to mutually agree to the proper amount of compensation due for damages under the Right of Way Agreement." [Doc. 5 at 6]. This Court agrees with Columbia and disagrees with RDFS.

It is clear that the parties agreed to arbitrate disputes over damages to crops, trees, or fences. However, the dispute in this case is not about damages to crops, trees or fences. The dispute is about whether Columbia has the authority to enter RDFS's property to perform subsidence mitigation work. Accordingly, this Court finds that the second element set forth in *Am. Gen. Life & Accident Ins. Co.* has not been satisfied as the Right of Way Agreement does not include an arbitration provision "which purports to cover the dispute."

## CONCLUSION

Based on the foregoing, Defendant RDFS, LLC's Motion to Dismiss Counts I & II of Plaintiff's Complaint Pursuant to FRCP 12(b)(3) [**Doc. 4**] is hereby **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: February 5, 2024.


_____
**JOHN PRESTON BAILEY**
**UNITED STATES DISTRICT JUDGE**